RECEIVED
STATESVILLE, NC
AUG 19 2005
Clerk, U. S. Dist. Court
W. Dist of N. C.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

Case No. 5:04cv49

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
| vs. | ) |
| TELEPHONE PROTECTION AGENCY, INC., a North Carolina corporation; | ) |
| ROBERT THOMPSON, a/k/a GREG THOMPSON, individually and as an officer of TELEPHONE PROTECTION AGENCY, INC.; | ) |
| REBECCA PHILLIPS, individually and as an officer of TELEPHONE PROTECTION AGENCY, INC.; and | ) |
| ALEX MCKAUGHN, individually and as an officer of TELEPHONE PROTECTION AGENCY, INC., | ) |
| Defendants. | ) |

**FINDINGS OF FACTS AND CONCLUSIONS OF LAW WITH RESPECT TO DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AGAINST DEFENDANT ROBERT THOMPSON**

1. Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), commenced this action by filing its Complaint for permanent injunction and other relief pursuant to Sections 5, 13(b), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45, 53(b), and 57b, charging that Defendant Telephone Protection Agency ("TPA") and its officers, the named individual Defendants, engaged in unfair or deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" (the "TSR" or the "Rule"), 16 C.F.R. Part 310.

2. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3. Venue is proper in the Western District of North Carolina under 28 U.S.C. §§ 1391(b) and (c), and 15 U.S.C. § 53(b), because the Defendants all lived or transacted business in this District.

4. The activities of the Defendants were in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44, because the Defendants made interstate telemarketing calls in the course and conduct of TPA's business.

5. The Complaint states a claim upon which relief may be granted to the FTC under Sections 5(a)(1), 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53(b), and 57b.

6. TPA's employees cold-called consumers throughout the United States, and sent out promotional materials to pitch a service that purportedly would stop unsolicited calls, and protect consumers's private information. Most consumers refused to purchase the service, but TPA nevertheless proceeded to charge their credit cards or withdraw money from their bank accounts without authorization. Declarations of Christine Crocker, Exh. 2, Att. H., ¶ 4 at p. 306; Amy Morgan, Exh. 2, Att. H, ¶ 4, at p. 318; Astra Stenson, Exh. 2, Att. H, ¶¶ 3, 5, at p. 310; Edward Smart, Exh. 2, Att. H, ¶ 2, at p. 303; Nancy Gerry, Exh. 2, Att. H, ¶¶ 2-4, at p. 315; Maureen Boldurian, Exh. 2, Att. H, ¶¶ 3-4, at p. 249; Geraldine Bequette, Exh. 2, Att H, ¶¶ 2-3, at p. 245; Richard Bequette, Exh. 2, Att. H, ¶¶ 3, 5, at p. 247; Pascal Perrino, Exh. 2, Att. H, ¶¶ 2, 4 at p. 270; and Kym Nix, Exh. 2, Att. H, ¶¶ 3, 6 at p. 292-93.[1]

---

[1] The references to Exhibits herein are to the three volumes of Exhibits in Support of Plaintiff's Motion for Default Judgment Against Robert Thompson.

7. Unauthorized billing is an unfair practice, and a violation of Section 5 of the FTC Act. *FTC v. Windward Marketing*, 1997 U.S. Dist. Lexis 17114 *37-38 (N.D. Ga. 1997); *FTC v. J.K. Publications*, 99 F. Supp. 2d 1176, 1202 (C.D. Ca. 2000).

8. TPA's unauthorized billing was routine and widespread. In response to a survey of consumers billed by TPA, 93% of the consumers reported that they did not agree to purchase services from TPA, and 94% of the consumers stated that they did not authorize TPA to bill their credit cards. Expert Report of Dr. Menoj Hastak, Exh. 2, Att. J. at p. 375.

9. TPA also made misrepresentations to consumers in a package of written promotional materials. The package included TPA's claims about the services the company would provide to a consumer in order to stop telemarketing calls and protect private information. TPA's claims were misrepresentations because TPA did not provide the services it promised, as discussed below.

10. Misrepresentations of material facts made to induce the purchase of goods or services constitute deceptive practices, and violations of Section 5 of the FTC Act. *FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir. 1988); *Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3rd Cir.1976), *cert. denied* 430 U.S. 983, (1977); *Resort Car Rental Sys. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975); *cert. denied* 423 U.S. 827 (1975); *Charles of the Ritz Distrib. Corp. v. FTC*, 143 F.2d 676, 679-80 (2d Cir. 1944).

11. TPA's claims were express claims. TPA represented that it would provide specific services to consumers. Express claims directly represent the fact at issue while implied claims do so in an oblique or indirect way. *Kraft Inc., v. FTC*, 970 F.2d 311, 319 n.4 (7th Cir. 1992). Since the representations TPA made were express, the claims were material. Express claims are

presumed to be material, *i.e.*, likely to affect a consumer's choice or conduct regarding a product. *Kraft Inc. v. FTC*, 970 F.2d at 322, *citing Cliffdale Assocs.* 103 F.T.C. 110, 165 (1984); *FTC Policy Statement on Deception*, 103 F.T.C. 174, 182 (1984) (appended to *Cliffdale Assocs.*). Consumer reliance on express claims is presumptively reasonable. *Kraft Inc. v. FTC*, 970 F.2d at 322; *FTC v. Int'l Computer Concepts, Inc.*, 1994-2 Trade Cas. (CCH) ¶ 70,798 at 73,402 (N.D. Ohio Oct. 24, 1994); *Five Star Auto Club*, 97 F. Supp. 2d 502, 528 (S.D.N.Y. 2000).

12. TPA represented in its package of promotional materials that it would register consumers with the "FCC's National **NO CALL** List." Declaration of Maureen Boldurian, Exh. 2, Att. H at p. 254. TPA made this claim during the entire time TPA was in business, which was during the period from November 2001 until March 2003. In fact, however, the FCC did not have a National **NO CALL** List during the time TPA made this claim. The National Do Not Call Registry, which was developed by the FTC and adopted by the FCC, first opened up for registration of consumers' telephone numbers in June 2003. Declaration of David M. Torok, Exh. 1, Att. L, ¶ 3 at p. 433. Therefore, TPA could not and did not provide this service to consumers.

13. TPA's representation that it would register consumers with the FCC's National NO CALL List was therefore false and misleading, and this express claim was a material misrepresentation that constitutes a deceptive practice in violation of Section 5 of the FTC Act, 15 U.S.C. § 45.

14. TPA further represented in its package of promotional materials that it would provide a monthly list to telemarketers and direct and electronic mail companies nationwide of a consumer's demand for privacy. Declaration of Maureen Boldurian, Exh. 2. Att. H at p. 254. TPA also represented in its promotional materials that it would notify every known telephone and

mailing list company not to sell or lease a consumer's information to anyone or any company, under any circumstances. *Id.*

15. TPA failed to produce a single document to support these privacy representations in response to a Civil Investigative Demand ("CID") from the FTC, stating that "no such records are available nor were they ever available." Declaration of Carol L. Jones, Exh. 1, Att. C at pp. 144, 152, 154. The evidence therefore shows that TPA failed to provide the privacy services it claimed to provide.

16. TPA's privacy representations were therefore false and misleading, and these express claims were material misrepresentations that constitute deceptive practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45.

17. TPA also violated the Telemarketing Sales Rule. The TSR applies to plans, programs, or campaigns which are conducted to induce the purchase of goods or services by use of one or more telephones and which involve more than one interstate telephone call. 16 C.F.R. § 310.2 (u). TPA's program to sell do-not-call and privacy services used multiple telephones for telemarketing and involved calls to multiple states. *E.g.*, Declaration of Geraldine Bequett, Exh. 2, Att. H, ¶ 1 at p. 245 (call to a consumer in Arizona); Declaration of Nancy Gerry, Exh. 2, Att. H, ¶ 1 at p. 315 (call to a consumer in Massachusetts), Declaration of Pasqual Perrino, Exh. 2, Att. H, ¶ 1 at p. 270 (call to a consumer in Maryland). TPA was therefore covered by the TSR and was required to comply with the Rule in effect at the time TPA's representations were made. Declaration of Carol L. Jones, Exh. 1, Att. G at pp. 234-44 (text of the TSR in effect at the time TPA made the representations)..

18. The TSR prohibits misrepresentations about the material aspects of the performance, efficacy, nature or central characteristics of products or services that are the subject of sales offers. Section 310.3(a)(2) of the TSR, 16 C.F.R. § 310.3(a)(2).

19. As described above, TPA falsely represented that the Defendants (1) would register consumers with the FCC's National NO Call List; (2) would provide a monthly list to telemarketers and direct and electronic mail companies nationwide of a consumer's demand for privacy; and (3) would notify every known telephone and mailing list company not to sell or lease a consumer's information. These three misrepresentations relate to the performance, efficacy, nature or central characteristics of TPA's purported do-not-call and privacy services. Therefore, the misrepresentations are violations of Section 310.3 of the TSR, as well as violations of § 5 of the FTC Act.

20. The TSR requires sellers to keep the following corporate records for two years from the date they are produced: (1) documents showing the name and last known address of each customer; (2) documents showing the goods or services purchased; (3) documents showing the date such goods or services were shipped and provided; and (4) documents showing the amount paid by the customer for such goods or services. Section 310.5 of the TSR, 16 C.F.R. § 310.5.

21. In April 2003, the FTC sent a CID to TPA requesting a number of documents, including corporate records TPA was required to keep pursuant to the TSR. Defendant Thompson responded to the CID as Vice-President of TPA, and admitted that TPA had been in business from November 2001 until March 2003, but could not provide a number of the records it was required to keep pursuant to the TSR. Declaration of Carol L. Jones, Exh. 1, Att. C at p. 154. TPA did not have any records at all for the period from November 2001 through May 2002,

or the period from October 2002 until March 2003. Moreover, the only records TPA provided in response to the CID, which were for the period from June 2002 to October 2002, did not include records showing the goods or services purchased by TPA's customers, or the date the goods or services were actually shipped or provided to TPA's customers. Therefore, TPA failed to keep required records in violation of Section 310.5 of the TSR.

22. In TPA's CID response, Defendant Thompson claimed that TPA did not bill consumers after October 31, 2002. *Id.* However, consumer declarations show that TPA continued unauthorized billing of consumers into 2003. Declarations of Nancy Gerry, Exh. 2, Att. H, ¶ 2 at p. 315; Amy Morgan, Exh. 2, Att. H, ¶ 2 at p. 318; Astra Stenson, Exh. 2, Att. H, ¶ 2 at p. 310; and Edward Smart, Exh. 2, Att. H., ¶ 3 at p. 303. TPA's bank records also show that money continued to be deposited into corporate bank accounts into 2003. Declaration of Allyson T. Himelfarb, Exh. 2, Att. K, ¶ 4 at p. 383 (TPA bank account statements showing deposit activity up to and including March 2003).

23. Defendants TPA and its president, Rebecca Phillips, have settled this action, as has Defendant Alex McKaughn, who acted as TPA's chief financial officer or comptroller. The stipulated judgment with Defendants TPA and Phillips was signed by the Court and filed on September 29, 2004, and the Stipulated Judgement with Defendant McKaughn was signed by the Court and filed on August 2, 2005.

24. After being properly served with the Complaint and Summons, Docket # 3, Defendant Robert Thompson has failed to appear or demonstrate any intent to defend this action, and has failed to file an answer to the Complaint within the time provided by the Federal Rules of

Civil Procedure. On July 12, 2004, the Clerk entered a default against Defendant Thompson. Docket # 5.

26. Because Defendant Thompson has not appeared or demonstrate any intent to defend this action, no notice of Plaintiff's motion for default judgment is required. Fed. R. Civ. P. 55(b)(2). The Waiver of Service signed by Defendant Thompson's attorney does not constitute an appearance in this case. *Rogers v. Hartford Life & Accident Insurance,* 167 F.3d 933, 937-938 (5th Cir. 1999); *N. Cent. Ill. Laborers' Dist. Council v. F.J. Groves & Sons Co.,* 842 F.2d 164, 170 (7th Cir. 1988). Because Defendant Thompson is 46 years old, Declaration of Carol L. Jones, Exh. 1, Att. B at p. 21, and not an infant or an incompetent, a default judgment may be entered against him.

26. Plaintiff has moved for a default judgment against Robert Thompson. Upon default, the factual allegations of a complaint, except those relating to the amount of damages, are to be taken as true. *TeleVideo Systems, Inc. v. Heidenthal* 826 F.2d 915, 917 (9th Cir. 1987); *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir. 1974); *Pope v. United States,* 323 U.S. 1, 12 (1944); *See also* 10 Wright & Miller, Federal Practice and Procedure § 2688, at 280, 284; Rule 8(d), Fed. R. Civ. P. ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."). The factual allegations of the Complaint are sufficient to establish that Defendant Thompson is personally liable for injunctive and monetary relief.

27. Defendant Thompson was the Vice President, and one of the two owners of TPA. Declaration of Carol L. Jones, Exh. 1, Att. B at p. 12 (Defendant's signature as TPA owner); *Id.* at Att. C, p 155 (Defendant's signature as Vice President). As an officer of a company that

engaged in the unfair and deceptive practices of misrepresentation and unauthorized billing in violation of Section 5 of the FTC Act, Defendant Thompson is personally liable for injunctive relief to prevent him from future law violations. *FTC v. World Media Brokers*, 2005 U.S. App. LEXIS 15326 *10-13 (7th Cir. 2005); *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996); *Barrett Carpet Mills v. CPSC*, 635 F.2d 299, 303-304 (4th Cir. 1980).

28. Individual defendants may also be liable for injunctive relief if they participated directly in the wrongful acts or had authority to control the corporate defendant. *FTC v. Amy Travel*, 875 F.2d 564, 573 (7th Cir. 1989); *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997). As an owner and officer of TPA with authority to sign documents on behalf of TPA, Defendant Thompson had the authority to control TPA, and may also be personally enjoined for that reason from engaging in unfair or deceptive acts and practices.

29. An individual defendant may be held liable for consumer redress to remedy corporate law violations if he has actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of the misrepresentations, or an awareness of a high probability of unlawful activity along with an intentional avoidance of the truth. *FTC v. World Media Brokers*, 2005 U.S. App. LEXIS 15326 at *12-13 (7th Cir. 2005); *FTC v. Freecom Communs., Inc.*, 401 F.3d 1192, 1207 (10th Cir. 2005); *FTC v. Pantron I Corp.*, 33 F.3d at 1088, 1103 (9th Cir. 1994); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d at 564.

30. Robert Thompson was an officer of TPA, a small, closely held company with 20 employees. Declaration of Carol L. Jones, Exh. 1, Att. B at p. 12; *Id.* at Exh. 1, ¶ 4 at p.1. TPA was sued by the Oklahoma Attorney General for unauthorized billing. *Id.* at Att. E, pp 210-229. As a senior officer and owner of a small, closely held company, Robert Thompson should have

known about the Attorney General's lawsuit, and if he did not already know about TPA's unlawful activity, should have learned about TPA's unauthorized billing in the course of responding to the lawsuit.

31. Moreover, Defendant Thompson was closely involved with the operation of TPA from its inception, and therefore should have known about its unlawful activity. Defendant Thompson was actively involved in TPA's business operations. He wrote checks, including checks to himself. *E.g.*, Declaration of Carol L. Jones, Exh. 1, Att. B., at pp. 65 (check #2315) 74 (check #2233) (checks written to others); 56 (check #2449), 74 (check #2232) (checks written to himself). He had unlimited authority to control TPA's bank accounts. *Id.* at p. 12. Defendant Thompson also registered the company's website which contained false representations that TPA would protect consumers' personal information. Declaration of Allyson T. Himmelfarb, Exh. 2, Att. I, ¶ 6 at p. 332. Defendant Thompson also signed the cover letter in the package of promotional materials sent to consumers that contained TPA's misrepresentations. Declaration of Maureen Boldurian, Exh. 2, Att. H at p. 253.

32. Finally, as alleged in the Complaint, Defendant Thompson formulated, directed, controlled or participated in TPA's unfair and deceptive acts and practices, which included unauthorized billing, misrepresentations, and violations of the Telemarketing Sales Rule. Complaint, Docket #1, ¶ 8 at pp. 3-4. By virtue of his position as an officer of TPA, his involvement in its operation, and his direction, control, or participation in TPA's unlawful practices, Defendant Thompson knew, should have known, or was recklessly indifferent to TPA's misrepresentations and other unlawful activity. Defendant Thompson is therefore personally liable for the full amount of consumer losses caused by TPA's unlawful activities.

33. The proper amount of relief, in a case involving violations of the FTC Act, is the full amount of money that the defendants received from consumers. *FTC v. Figgie Intn'l*, 994 F.2d 595, 606 (9th Cir. 1993) ("Customers who purchased rhinestones as diamonds should get all of their money back. . . . The fraud in the selling, not the value of the thing sold, is what entitles consumers in this case to full refunds."); *FTC v. Febre*, 128 F.2d. 530, 535-36 (7th Cir. 1997); *FTC v. Gem Merch. Corp.*, 87 F.3d at 468; *Five Star Auto Club*, 97 F. Supp. 2d at 534. In this case, consumers are entitled to the return of all of their money both because they did not authorize charges for TPA's purported services, and because TPA did not provide any of the services it claimed it would.

34. Plaintiff has the burden of showing that its calculations reasonably approximate the amount of consumer losses. *FTC v. Febre*, 128 F.3d at 535, *citing SEC v. First City Financial Corp., Ltd.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989) *and CFTC v. Am. Metals Exch. Corp.*, 991 F.2d 71, 77 (3d Cir. 1993); *FTC v. Medicor, LLC*, 217 F. Supp. 2d 1048, 1057 (D.C. Cal. 2002); *FTC v. Five Star Auto Club*, 97 F. Supp. 2d at 534-535. *See also SEC v. First Jersey Securities*, 101 F.3d 1450, 1475 (2d Cir. 1996) *cert. denied* 522 U.S. 812, (1997); *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995); *SEC v. Lorin*, 76 F.3d 458, 462 (2d Cir.1996). A reasonable approximation of the total amount of money lost by consumers can be made using account statements obtained from TPA's bank.

35. The only records available from TPA that can be used to determine consumer injury cover only a fraction of the time it was in operation. During a four-month period from June 24, 2002 through November 2, 2002, TPA recorded receipts of $862,874.80 from consumers. Declaration of Carol L. Jones, Exh. 1, ¶ 4 at p. 1. During a six-month period from June 28, 2002,

to December 30, 2002, TPA provided refunds or credits to consumers of $268,207.80. *Id.* Thus, the total amount of money lost by consumers during the time for which TPA had records was $594,667 ($862,874.80 - 268,207.80), although this figure understates consumer losses because it includes refund credits TPA issued to consumers during two months for which there is no record of receipts.

36. Because TPA took in money from consumers both before and after the period for which records are available, the amount of consumer injury is greater than $594,667. TPA conducted business for a 16 month period from November 2002 through March 2003. If the $594,667 income calculation for 4 of the 16 months of operation were projected over the full 16 months of TPA's operations, consumer losses would total $2,378,668 ($594,667 * 4). This total would overstate consumer losses, however, by presuming that TPA's receipts did not decline as its business wound down.

37. Since the records maintained by TPA make it impossible to determine with reasonable certainty the full amount of injury suffered by consumers, the risk of uncertainty should fall on the defendants who failed to keep complete and accurate billing records as required by the TSR. *FTC v. Febre*, 128 F.3d at 535; *Five Star Auto Club*, 97 F. Supp. 2d at 534-535.

38. TPA's bank account records for 11 of the 16 months the company was in business, from November 2002 through March 2003, show that a total of $672,717.85 was deposited into TPA's accounts. Declaration of Allyson T. Himelfarb, Exh. 2, Att. K, ¶¶ 4-6 at pp. 383-84. This total is a reasonable approximation of consumer losses because it accounts for the total deposits into TPA's accounts, as recorded by TPA's bank. Although this figure does not reflect credits or refunds issued to consumers, it also significantly understates consumer injury because it does not

include receipts for 5 of the 16 months that TPA was in business, for which bank records could not be found. Stipulated Judgments entered into by Defendants TPA and Alex McKaughn, who acted as TPA's chief financial officer and comptroller, include their acknowledgments that the amount of consumer losses caused by TPA was $672,717.85. Docket #11, Paragraph V.B. at p. 8; Docket #24, Paragraph IV.B. at p. 6. Thus, a reasonable approximation of consumer injury in this case is $672,717.85.

39. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), authorizes a district court to grant permanent injunctive relief to enjoin violations of the Act. *FTC v. Pantron I Corp.*, 33 F.3d at 1102; *FTC v. H.N. Singer, Inc.* 668 F.2d at 1110-1111. In a Section 13(b) action, a court may exercise the full breadth of its equitable authority. Because Section 13(b) gives the court authority to grant a permanent injunction, the statute also gives the court authority "to grant any ancillary relief necessary to accomplish complete justice because it did not limit that traditional equitable power explicitly or by necessary and inescapable inference." *FTC v. H.N. Singer*, 668 F.2d at 1113. Thus the court may order remedies such as rescission of contracts and restitution. *Id.*; *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d, 1431, 1434 (11th Cir. 1984).

40. Accordingly, a separate Default Judgment and Order of Permanent Injunction ("Order") has been entered against Defendant Thompson holding him personally liable for payment of consumer redress in the amount of $672,717.85.

41. Defendant Thompson was the senior officer of a company that engaged in particularly egregious and widespread violations of the law that were tantamount to theft. To protect the public from further injury arising from law violations by Defendant Thompson, the

Order includes injunctive provisions, including a ban prohibiting Defendant Thompson from engaging in telemarketing, as that term is defined in the Order.

42. There is precedent for similar court-ordered bans based on the past conduct of defendants as a means of preventing future law violations. *Five Star Auto Club*, 97 F. Supp. 536 (ban on multilevel marketing); *FTC v. Micom*, 1997-1 Trade Cas. (CCH) ¶ 71,753, at 79,336 (S.D.N.Y. 1997) (ban on marketing investments involving licenses or permits issued by federal government or agencies); *FTC v. Wetherill*, 1993-1 Trade Cas. (CCH) ¶ 70,276 at 70,376 (C.D. Cal. 1993) (ban on telemarketing to protect public from potential future violations by defendant).

43. The FTC is entitled to issue and obtain orders against defendants that effectively fence them in to prevent future law violations. *FTC v. Ruberoid Co.*, 343 U.S. 470, 473 (1952) ("If the Commission is to attain the objectives Congress envisioned, it cannot be required to confine its road block to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its order may not be by-passed with impunity."); *FTC v. Think Achievement Corp.* 144 F. Supp. 1013, 1016-1019 (N.D. Ind. October 18, 2000).

44. The Order therefore also includes injunctive provisions requested by the FTC that prohibit Defendant Thompson from making the misrepresentations that led to this action through means other than telemarketing, from billing consumers without first obtaining written authorization and clearly and conspicuously disclosing all the material terms and conditions of the goods or services offered, and from selling TPA's customer lists to prevent future injury to TPA's victims.

45. Finally, the Order includes a number of additional provisions requested by the FTC to enable the agency to monitor Defendant Thompson's compliance with the Order effectively. These provisions are also contained in the settlements with Defendants TPA, Phillips and McKaughn, and are unobjectionable.

46. Entry of the Order against Defendant Robert Thompson is in the public interest.

SO ORDERED this 29th day of August, 2005.

THE HONORABLE RICHARD L. VOORHEES
UNITED STATES DISTRICT JUDGE


PRESENTED BY:

_____ Date 8/18/05
Russell Deitch
Craig Tregillus
*Attorneys for Plaintiff*